IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 07-24 Erie |
| | ) | |
| MICHAEL P. MARZZARELLA | ) | (18 U.S.C. §922(k)) |

**GOVERNMENT'S RESPONSE TO MOTION TO DISMISS INDICTMENT**

AND NOW comes the United States of America, by and through its attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christine A. Sanner, Assistant United States Attorney for said district, and hereby submits the following response to the defendant's Motion to Dismiss the Indictment:

I.  Factual Background and Charges

In April 2006, officers of the Pennsylvania State Police received information from a confidential informant that the defendant was involved in gun trafficking in and around Meadville, Pennsylvania. Among other things, the confidential informant told the police that the defendant possessed a firearm with an obliterated serial number.

On April 26, 2006, a Pennsylvania State Police officer, acting in an undercover capacity, accompanied the confidential informant to the defendant's apartment to purchase a firearm. The defendant sold the undercover officer a Titan, .25 caliber semi-

automatic pistol with an obliterated serial number, for $200.

On May 16, 2006, the undercover officer purchased a second firearm from the defendant.  During this sale, the defendant told the undercover officer that the second firearm's serial number could be ground off, so that it, too, would be obliterated.

In June 2006, the undercover officer attempted to purchase additional firearms from the defendant.  However, no additional transactions took place.

On June 12, 2007, the grand jury returned a one-count indictment charging the defendant with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).

II.  Defendant's Motion to Dismiss

In his Motion to Dismiss the Indictment, the defendant contends that he has a Second Amendment right to possess a firearm with an obliterated serial number.  Defendant's Br. at 9.

To support his argument that such a right exists, the defendant cites *District of Columbia v. Heller*, 128 S.Ct. 2783, 2008 WL 2520816 (2008).  However, the Supreme Court's decision does not support the defendant's proposition that there is a right arising under the Second Amendment to possess a firearm that has an obliterated serial number.  *See id.; see also United States v. Lewis*, 2008 WL 2625633 (D. Virgin Islands, July 3, 2008) (attached hereto as Ex. A) (pursuant to *Heller*, there is no Second Amendment right to possess a firearm with an obliterated serial number);

2

*United States v. Zaleski*, 2008 WL 4234419, *n.2 (D. Conn., June 30, 2008) (attached hereto as Ex. B) (analyzing *Heller* in concluding that statute prohibiting possession of firearm with obliterated serial number passes "any level" of scrutiny).

III. <u>The Supreme Court's Decision in *Heller*</u>

In *Heller*, the Supreme Court affirmed the decision of the D.C. Circuit which struck down the District of Columbia's handgun ban.  The Supreme Court's decision concluded that the D.C. law, which prohibited any person from possessing a handgun and required that any other lawfully owned firearm be kept unloaded and disassembled or bound by a trigger-lock while in the home, violated the individual right to keep and bear arms protected by the Second Amendment to the U.S. Constitution.  *See Heller*, 2008 WL 2520816, at *3.

In a lengthy majority opinion tracing the history of the Second Amendment, the *Heller* Court held that the Second Amendment protects an individual's right to possess firearms, explaining that the right is not limited to the need to maintain a militia.  In other words, the right is an individual one, rather than a collective one designed solely for the support of a militia.  At bottom, the Court's holding was that the Second Amendment right protects an individual's right to maintain a handgun in his home for the purpose of self defense.  *See Heller*, 2008 WL 2520816 at *29-33.

The Supreme Court did not identify the precise contours of the Second Amendment right, nor did it set out the appropriate standard of review for judging whether a government regulation of firearms violates the Second Amendment, noting instead that D.C.'s handgun ban would not pass muster "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." *Heller*, 2008 WL 2520816 at *29.

Notably, in holding D.C.'s handgun ban unconstitutional, the Supreme Court did not invalidate the District's entire registration and licensing scheme. Indeed, the Court's remedy for the Second Amendment violation presumed that the District's basic framework for registering and licensing firearms would remain in place. *Id*. at 2819, 2822 (District "must permit [Heller] to register his handgun and must issue him a license to carry it in the home ").

The Court went on to include several passages describing the types of firearms and other regulations to which its holding did not apply.

It began this effort by noting that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 128 S.Ct. at 2816, 2008 WL 2520816 at *28. The Court wrote that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner

4

whatsoever and for whatever purpose." *Id*. The Court added:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 2816-17. The Court specifically noted that those "presumptively lawful regulatory measures" were just examples, and that its list was not "exhaustive." *Id*. at 2817 n.26.

Along the same lines, the Court found that the Second Amendment has never been construed to protect the carrying of dangerous and unusual weapons. Finally, the Second Amendment does not "protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id*. at 2816. *See also id*. at 2813 (Second Amendment right described as "bearing arms for a lawful purpose"); *id*. at 2816 (District's handgun ban unconstitutional as applied in part because it prohibits arms that are overwhelmingly chosen by American society for "lawful purpose" of self-defense). Accordingly, the argument that *Heller* supports the defendant's conclusion that § 922(k) is unconstitutional must be rejected: as discussed below, there is no "law-abiding," "lawful purpose" to possessing or transferring such a weapon. *See id; see also Lewis*, 2008 WL 2625633 (pursuant to *Heller*, there is no Second Amendment

5

right to possess a firearm with an obliterated serial number); *Zaleski*, 2008 WL 4234419 (following *Heller*, statute prohibiting possession of firearm with obliterated serial number passes "any level" of scrutiny).  As discussed below, unlike the statutes at issue in *Heller*, section 922(k) does not ban handguns generally and does not prevent the lawful possession or use of firearms.

IV.  Standard of Review

Inviting the court to apply "strict scrutiny," the defendant urges the Court to look to the Supreme Court's First Amendment jurisprudence for guidance in analyzing the Second Amendment post-*Heller*.  *See* Defendant's Br. at 7.  He suggests that this Court should find that section 922(k) is akin to an invalid, presumptively unconstitutional, content-based restriction on speech.  *See id*. at 8-9.  No case law supports such a conclusion, however.  Moreover, section 922(k) has no impact upon the First Amendment: the statute, which prohibits possessing or transferring a firearm with an obliterated serial number, does not directly, or indirectly, regulate speech, or its content.  Applying First Amendment jurisprudence then, does not "make[] sense" despite defendant's suggestion.  Defendant's Br. at 8.

Moreover, as noted above, the Supreme Court majority in *Heller* expressly "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," leaving that question to be settled later.  *Heller*, 128 S.Ct. at 2821, 2008 WL 2520817 at

*32.

Subsequently, courts analyzing the Second Amendment post-*Heller* have found that the application of strict scrutiny in would be both "unwarranted" and "inappropriate." *United States v. Bledsoe*, 2008 WL 3538717, *3 (W.D. Tex., Aug. 8, 2008) (applying intermediate scrutiny in analyzing § 922); *Zaleski*, 2008 WL 4234419, *n.2 (stating that "922(k) would pass any level of scrutiny" because it does nothing to limit lawful possession or use of a firearm).  This is so because § 922 does not proscribe gun possession generally among all people, such as the statute at issue in *Heller*, but instead merely regulates firearms possession.  *See Bledsoe*, 2008 WL 3538717, *3 (stating that the "Supreme Court suggests that § 922 does not fall within the same class of statutes proscribing gun possession, such as the statute at question in *Heller*.")  Unlike the handgun ban at issue in *Heller*, the § 922(k) offense of possessing a firearm with an obliterated serial number is not an outright ban on firearms possession.

This Court need not decide the question of the proper standard of review to apply to Second Amendment claims, because the text of the *Heller* opinion makes clear that the prosecution of the defendant in the instant case is entirely proper.  *See Lewis*, 2008 WL 2625633 (finding § 922(k) constitutional without addressing standard of review); *Zaleski*, 2008 WL 4234419, *n.2 (stating that "922(k) would pass any level of scrutiny").  *Accord, e.g., United*

*States v. Booker*, — F.Supp.2d — , 2008 WL 3411793, at \*2 (D. Maine, Aug. 11, 2008) (analyzing *Heller* to find § 922(g)(9) constitutional without adopting standard of review).

Nonetheless, should this Court choose to adopt the intermediate standard of scrutiny utilized by the court in *Bledsoe*, it is clear that § 922 is "substantially related to an important governmental objective."  2008 WL 3538717, at \*4 (citation and internal quotation marks omitted) (applying intermediate scrutiny to analyze § 922).  Public safety concerns, as noted by the court in *Bledsoe*, are important governmental objectives supporting the statute, and § 922(k) is substantially related to addressing those public safety concerns.  *Id.*[1]

As the Ninth Circuit explained, one's motivation in possessing a firearm with an obliterated serial number lies in the fact that the firearm has been thereby rendered untraceable, or at least more difficult to trace.  *United States v. Carter*, 421 F.3d 909, 910 (9th Cir. 2005).  A firearm that is not traceable has "greater street value," and a "greater flexibility to be used for illicit activities."  *Id*. at 910 & 913-14 (adding that purpose of

---

[1] Likewise, even if strict scrutiny were to be applied in such a case, the government submits that § 922(k) is narrowly tailored to meet a compelling governmental interest in reducing crime. But, again, the statute at issue before the court is not a content based restriction on speech. *See, e.g., Lutz v. City of York, PA,* 899 F.2d 255, n. 40 & 41 (3d Cir. 1990) (noting that not every "burden" on First Amendment rights is sufficiently serious to trigger heightened scrutiny). Any "burden" that § 922(k) imposes on firearms possession is trivial.

8

§ 922(k) was "to aid in making it possible to keep firearms out of the hands of those not legally entitled to possess them ... and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States") (citations omitted).  Thus, § 922(k) punishes those who possess "a firearm whose principal means of tracing origin and transfers in ownership – its serial number – has been deleted or made appreciably more difficult to make out" so as to discourage the use of untraceable weaponry.  *Id.* at 915-16 (citations and internal quotation marks omitted).  *See also United States v. Adams*, 305 F.3d 30, 34 (1st Cir. 2002) (stating that "anyone can see what Congress was getting at" in enacting § 922(k); the statute "aims to punish one who possesses a firearm whose principal means of tracing origin and transfers in ownership – its serial number – has been deleted or made appreciably more difficult to make out").

The statute prohibiting the possession of firearms with obliterated serial numbers assists law enforcement authorities in firearms tracing and combating the increasing prevalence of crime.  Punishing those who possess firearms whose serial numbers have been obliterated discourages the use of untraceable weaponry.  Using an intermediate scrutiny analysis, it is clear that section 922(k) is substantially related to this important governmental objective relating to public safety.  *Lewis*, 2008 WL 2625633; *Zaleski*, 2008

WL 4234419, \*n.2; *Bledsoe*, 2008 WL 3538717, at \*4.[2]

V. <u>Post-Heller Decisions Analyzing § 922(k)</u>

As noted above, following the Supreme Court's decision in *Heller*, a district court in the Third Circuit directly addressed the issue that the defendant raises in the instant case, finding that section 922(k) does not violate the Second Amendment. *United States v. Lewis*, 2008 WL 2625633 (D. Virgin Islands, July 3, 2008).

In *Lewis*, the defendant was charged with possession of a firearm with an obliterated serial number, in violation of section 922(k). *Id*. at \*1. Just as the defendant does in the instant case, the defendant in *Lewis* cited *Heller* to argue that the § 922(k) charge against him should be dismissed. *Id*. The court disagreed. First, the court recognized that the Third Circuit has previously explained that "the Second Amendment furnishes no absolute right to firearms." *Id*. (citing *United States v. Rybar*, 103 F.3d 273, 286 (3d Cir. 1996), and *United States v. Willaman*, 437 F.3d 354, 356-57 (3d Cir. 2006), *cert. denied*, 547 U.S. 1208 (2006)). The court noted that in *Heller*, the Supreme Court likewise held that the right to possess firearms "is not

---

[2] To say that the defendant was "in his home" while he possessed and sold the Titan .25 caliber pistol with an obliterated serial number does not change the analysis. The government's purpose in enacting the statute remains the same: to discourage the possession of untraceable weaponry, to aid law enforcement in firearms tracing, and to thereby combat the increasing prevalence of crime.

10

unfettered." *Id*. at n.1. In reaching its conclusion that section 922(k) did not violate the Second Amendment, and that there is no right to possess a firearm with an obliterated serial number, the district court cited *Heller*, noting that in that case, the Supreme Court both identified "presumptively lawful regulatory measures" and noted that its list of those measures did "not purport to be exhaustive." *Id*. at n.1.

Similarly, in *United States v. Zaleski*, 2008 WL 4234419 (D. Conn. June 30, 2008), the defendant was charged with unlawfully possessing a variety of weapons. In a superseding indictment, he was specifically charged with possessing a firearm with an altered or obliterated serial number, in violation of 18 U.S.C. § 922(k), among other things. *See id.* at 1. Before the superseding indictment was returned, the defendant filed a motion to dismiss, contending that following the Supreme Court's decision in *Heller*, he had a Second Amendment right to possess those weapons with which he was charged. In its Order denying the motion to dismiss, the court held that "[t]he weakness of Zaleski's argument is that he . . . ignores the fact that what is actually protected, according to the Supreme Court's analysis, is the right to possess and use the kind of weapon ordinarily used <u>for a lawful purpose</u>." *Id*. at 3 (citing *Heller*) (emphasis added). As the court found, "[i]t cannot seriously be contended that any of the array of weapons Zaleski is alleged to have possessed are of the sort typically possessed by

11

law-abiding citizens for lawful purposes." *Id*. (internal quotation marks omitted).

Referring specifically to the charge in the superseding indictment relating to the defendant's possession of a firearm with an obliterated serial number, the court stated:

> It is clear that [this statute] would not be subject to successful challenge. Like the registration requirement, laws prohibiting the transportation and receiving of firearms from which the serial numbers have been removed or altered, such as 18 U.S.C. § 922(k), would pass any level of scrutiny since such requirements do nothing to limit lawful possession or use of a firearm.

*Id.* at n.2. The court went on to find that any challenge to statutes requiring the registration of firearms would also fail. *Id.* at 5.

As the court explained, "*Heller* was careful to distinguish the District of Columbia's handgun <u>ban</u> from the vast majority of regulations on firearms possession." *Id.* at 4 (emphasis added) (citing *Heller*) ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban.") The court explained that the statutes that Zaleski was charged with violating were "a far cry" from the District of Columbia's ban. *Id*. at 4.

The *Zaleski* court added: "It is clear from the [Supreme] Court's opinion that registration requirements . . . do not impermissibly infringe upon the Second Amendment right. The relief

12

awarded to the respondent in *Heller* as a result of the decision of the Court in his favor was that the District of Columbia was ordered to allow him to register his handgun so that a license could be issued for him to possess it in his home. . . . a registration requirement does nothing to limit lawful possession or use of a firearm, and it plays an important role in limiting the unlawful possession, use and sale of firearms." *Id*. at 4 (internal citations and quotation marks omitted).

Likewise, in the instant case, section § 922(k), the statute which prohibits the defendant from possessing a firearm that has an obliterated serial number, does not "ban" firearms possession generally. *See Zaleski,* 2008 WL 4234419, at n.2. In fact, section 922(k) "do[es] nothing to limit lawful possession or use of a firearm" as the court in *Zaleski* explained. *Id.* There is no legitimate purpose, or interest, in possessing a firearm with an obliterated serial number, as opposed to a firearm that is traceable. Put simply, "[l]aw abiding citizens" acting "for lawful purposes," *id*. at 3, have no need to possess untraceable weaponry, and do not obliterate serial numbers. The obliterated serial number functions to render the firearm untraceable, or more difficult to trace, thereby increasing its "street value," and according it "greater flexibility to be used for illicit activities." *Carter*, 421 F.3d at 910. Section 922(k) does nothing to limit lawful possession or use of a firearm, and it plays an

13

important role in limiting the unlawful possession, use and sale of firearms. The statute aids in "keep[ing] firearms out of the hands of those not legally entitled to possess them" and "assist[s] law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States." *Id*. at 913-14 (citations omitted). Section 922(k) discourages the use of untraceable weaponry. *See id*. at 915-16 (citations and internal quotation marks omitted).

The defendant in the instant case, in possessing a firearm with an obliterated serial, was not acting as a "[l]aw abiding citizen" with a "lawful purpose." *See Zaleski*, 2008 WL 4234419 at 3 (citing *Heller*). Rather, the possession of firearms with obliterated serial numbers shows blatant disregard for the law, makes firearms more difficult to trace, and presents a substantial risk of the use of improper physical force. *See Carter*, 421 F.3d at 910 & 913-14 (finding that firearm with obliterated serial number has "greater flexibility to be used for illicit activities" and that serial numbers aid law enforcement "in combating the increasing prevalence of crime in the United States"); *accord*, *United States v. Feliciano*, 2004 WL 539976 (3d Cir., March 17, 2004) (purpose in possession of firearm with obliterated serial number was so that firearm would not be traced back to defendant).

In the instant case, the defendant knowingly possessed

14

and sold the Titan, .25 caliber semi-automatic pistol with an obliterated serial number to a Pennsylvania State Police officer who was acting in an undercover capacity, for $200.  Several weeks later, he sold a second firearm to the same undercover officer, explaining how the second firearm's serial number could also be obliterated.  This conduct – possessing a firearm with an obliterated serial number – is not the type of lawful conduct that the Second Amendment protects.  *Heller*, 128 S.Ct. 2783; *Lewis*, 2008 WL 2625633; *Zaleski*, 2008 WL 4234419, *n.2.  Unlike the statute at issue in *Heller*, section 922(k) does not generally ban the possession of firearms, does not prohibit an entire class of arms, and does not require a firearm to be rendered inoperable at all times.  *Heller*, 128 S.Ct. 2783.  The right to keep and bear arms is not substantially burdened by a ban on knowingly possessing a firearm with an obliterated serial number.

    WHEREFORE, for all of the above-stated reasons, the government respectfully requests that the Court enter an Order denying the defendant's Motion to Dismiss the Indictment.

    Respectfully submitted,

    MARY BETH BUCHANAN
    United States Attorney

    s/ Christine A. Sanner
    CHRISTINE A. SANNER
    Assistant U.S. Attorney
    PA ID No. 85039