Westlaw.

2008 WL 4234419 (D.Conn.)

Page 1

For Opinion See 559 F.Supp.2d 178

United States District Court, D. Connecticut.
UNITED STATES OF AMERICA,
v.
Alan ZALESKI, Defendant.
No. 3:06CR282(EBB).
June 30, 2008.

Ruling on Defendant's Motion to Dismiss All Counts of the Indictment

Defendant Alan Zaleski has moved to dismiss all counts of the indictment. He claims that the charges against him violate the right to keep and bear arms guaranteed by the Second Amendment to the United States Constitution. For the following reasons, the motion [Doc. No. 76] is DENIED.

*FACTUAL BACKGROUND*

On October 18, 2006, an indictment was returned charging the defendant with 30 counts of possession of firearms that were not registered by him with the National Firearms and Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. The charges relate to an assortment of weapons allegedly found at the defendant's home. These weapons include machine guns, machine pistols, hand grenades, homemade silencers, an improvised explosive device and a shotgun.

Subsequent to the filing of the defendant's motion, on June 3, 2008, a superseding indictment was returned charging the defendant under different statutes but relating to the same collection of firearms and explosive devices. Counts 1 to 15 of the superseding indictment charge the defendant with possession of machine guns in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). Count 16 charges the defendant with possession of a firearm from which the serial number has been removed, altered or obliterated in violation of 18 U.S.C. §§ 922 (k) and 924(a) (1) (B). Counts 17 to 30 charge the defendant with possession of firearms, silencers, hand grenades and other destructive devices that were not registered by him with the National Firearms and Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

*DISCUSSION*

The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme has recently announced that this language guarantees an "individual right" to possess firearms. *District of Columbia v. Heller,*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2008 WL 4234419 (D.Conn.)                                                              Page 2

544 U.S. , No. 07-290, slip op. at 2-32 (U.S. June 26, 2008). In *Heller*, the Court held that a District of Columbia law prohibiting the possession of handguns in the home and requiring that all lawfully possessed firearms in the home be disassembled or rendered inoperable through the use of a "trigger lock" violated the Second Amendment. In invalidating the law, the Court was careful to note, however, that "the right secured by the Second Amendment is not unlimited." *Id.* at 54 (noting that courts and commentators have "routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

Zaleski's argument relies on the Supreme Court's reasoning in *United States v. Miller*, 307 U.S. 174 (1939), in which the Court rejected the Second Amendment argument made by two defendants charged with transporting a short-barreled shotgun in interstate commerce in violation of a federal statute. In *Miller*, 307 U.S. at 818, the Court reasoned that
In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense.

Zaleski argues that it follows from this reasoning that the machine guns, explosive devices, and silencers he allegedly possessed fall within the protection of the Second Amendment because these weapons, he claims, are "part of the ordinary military equipment." (Def.'s Mot. at 5.) For the same reason that short-barreled shotguns are excluded from Second Amendment protection, Zaleski argues, he has a constitutional right to possess the weapons alleged in the indictment because these weapons "have a reasonable relationship to military use." (*Id.*)

However, the Supreme Court has explicitly rejected this reading of *Miller*. In *Heller*, slip op. at 50, the Supreme Court accepted the notion that *Miller* "stands for the proposition that the Second Amendment right ... extends only to certain types of weapons." However, whether or not a weapon falls within the Second Amendment's protection does not depend in whether it is "part of the ordinary military equipment." The Court located the proper test for whether a weapon falls within the Second Amendment's guarantee in the *Miller* Court's description of the operation of the militia at the time of the Founding: "ordinarily when called for service ... men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id.* at 52 (quoting *Miller*, 307 U.S. at 179). The Court accordingly reasoned that the weapons protected by the Second Amendment are those that are " 'in common use at the time' for lawful purposes like self-defense." *Id.* (citing *State v. Kessler*, 614 P. 2d 94, 98 (Or. 1980) (citing G. Neumann, Swords and Blades of the American Revolution 6-15, 252-254 (1973)) ("In the colonial and revolutionary war era, [small-arms] weapons used by militiamen

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

and weapons used in defense of person and home were one and the same.")) *Miller*, therefore, is properly read as holding "only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 53.

This reading of *Miller* is consistent with what is now the proper interpretation of the language of the Second Amendment. In *Heller*, the Court held that the "prefatory clause" of the Second Amendment does not control the interpretation of the "operative clause." *Id.* at 5-54. The prefatory clause "announces the purpose for which the right was codified, [namely] to prevent elimination of the militia." However, the Court found that it does not follow from this observation that "preserving the militia was the only reason Americans valued the ancient right [to keep and bear arms]; most undoubtedly thought it was even more important for self-defense and hunting." *Id.* at 26. The weakness of Zaleski's argument is that he relies entirely on the prefatory clause and ignores the fact that what is actually protected, according to the Supreme Court's analysis, is the right to possess and use the kind of weapon ordinarily possessed for a lawful purpose. *See id.* at 55 (conceding that there is a "limited degree of fit between the prefatory and the protected right" and noting that many of the weapons "most useful for military service" could lawfully be banned since they are "highly unusual in society at large").

Insofar as Zaleski claims that the Second Amendment guarantees an individual right to possess the particular weapons alleged in the indictment, his argument must fail. It cannot seriously be contended that any of the array of weapons Zaleski is alleged to have possessed are of the sort "typically possessed by law-abiding citizens for lawful purposes." The possession and use of machine guns, homemade silencers, hand grenades and improvised explosive devices are highly unusual, and therefore, these weapons do not fall within the protections of the Second Amendment.[FN1]

> FN1. The parties apparently agree that the court is in a position to make a finding regarding the nature of the weapons based on their description in the indictment. The defendant in particular urges the court to take judicial notice of the fact that the weapons are "part of the ordinary military equipment." (Def.'s Mem. at 5.) The court therefore has no difficulty in concluding, based on the descriptions in the indictment, that the weapons are not of the type typically possessed by law-abiding citizens for lawful purposes. The court notes, however, that the item Zaleski is alleged, in Count 17 of the superseding indictment, to have failed to register, is a shotgun described as "17.75 inches overall" with "11.25 inch barrels." Neither of the parties have addressed this item, and ordinarily the court might not be in a position to make a finding, based on this description alone, of whether or not this item falls within the protection of the Second Amendment. However, the court notes that the Supreme Court in *Miller* seems to have resolved this issue when it concluded that a shotgun with a barrel

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of less than 18 inches was not protected by the Second Amendment.

It is unclear from the defendant's motion whether he claims a right to possess the particular weapons alleged in the indictment, or whether he also challenges the registration laws under which he is charged. (See, e.g., Def.'s Mot. at 1 ("Simply put, the arms at issue have reasonable relationships to militia use, and therefore 26 U.S.C. §§5841, 5861(d), and 5871 impermissibly infringe upon the Defendant's constitutionally guaranteed right to keep and bear such arms.")) However, it is clear that such a facial challenge to these federal firearms statutes would fail, even after the Supreme Court's decision in *Heller*.

The Court in *Heller* was careful to distinguish the District of Columbia's handgun ban from the vast majority of regulations on firearms possession. *See, e.g., Heller*, slip op. at 57 ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban.") The statutes under which Zaleski has been charged are a far cry from the District of Columbia's law, which "amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for [the] lawful purpose of self-defense." *Id.* at 56. In *Heller,* the Court declined to address the question of what level of scrutiny should be applied to laws regulating the possession of the sort of firearm "typically possessed by law-abiding citizens for lawful purposes." *See Id.* at 56 (stating that the law at issue would be found invalid "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights"). However, the Court provided a non-exhaustive list of the kinds of regulations that would pass scrutiny:

nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 54.

It is clear from the Court's opinion that registration requirements, such as those contained in 26 U.S.C. §§ 5841, 5861(d), and 5871, do not impermissibly infringe upon the Second Amendment right. The relief awarded to the respondent in *Heller* as a result of the decision of the Court in his favor was that the District of Columbia was ordered to allow him to register his handgun so that a license could be issued for him to possess it in his home. *Id.* at 64. The registration requirement itself does not seem to have been challenged (*see id.* at 59), and nothing in the opinion suggests that such a requirement could be subject to challenge. *See also Parker v. District of Columbia,* 478 F.3d 370, 399 (D.C. Cir. 2007) (finding that the registration requirements for firearms "might be thought consistent with a 'well regulated Militia.' ")[FN2] Furthermore, a registration requirement does nothing to limit lawful possession or use of a firearm, and it plays an important role in limiting the unlawful possession, use and sale of firearms.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FN2. Because his motion was filed before the superseding indictment was returned, Zaleski has not challenged the additional statutes under which he has been charged in the superseding indictment. It is clear that these statutes would not be subject to successful challenge. Like the registration requirement, laws prohibiting the transportation and receiving of firearms from which the serial numbers have been removed or altered, such as 18 U.S.C. § 922(k), would pass any level of scrutiny since such requirements do nothing to limit lawful possession or use of a firearm. In addition, in connection with its discussion of *Miller*, the Court in *Heller* strongly suggested that the prohibitions on the possession of machine guns, such as 18 U.S.C. § 922(o), do not violate the Second Amendment. *Heller*, slip op. at 50-52 (stating a reading of *Miller* under which only weapons useful in warfare would be protected would be "startling" because it would mean that the National Firearms Act's restrictions on the possession of machine guns would violate the Second Amendment). Machine guns are not in "common use" at this time and regulations restricting their possession are "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *See id.* at 55 (quoting 4 Blackstone 148-149 (1769)).

CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss all counts of the indictment [Doc. No. 76] is DENIED.

SO ORDERED.

/s/ Ellen Bree Burns, SUSDJ

ELLEN BREE BURNS

SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 30th day of June, 2008.

UNITED STATES OF AMERICA, v. Alan ZALESKI, Defendant.
2008 WL 4234419 (D.Conn.)

END OF DOCUMENT

UNITED STATES OF AMERICA, v. Alan ZALESKI, Defendant.
2008 WL 4234419   (D.Conn. )   (Trial Motion, Memorandum and Affidavit )

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.